## MARY P. GRUMAN AND OTHERS v. INVESTORS DIVERSIFIED SERVICES, INC.

78 N. W. (2d) 377.

June 22, 1956—No. 36,798.

*Nichols, Mullin, Farnand & Lee* and *George C. Mastor,* for appellant.

*Kaplan, Edelman & Kaplan,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action to recover rent alleged to be due on a written lease. Upon motion for summary judgment, the court ordered judgment for plaintiffs in the sum of $20,656.63. This is an appeal from the judgment entered pursuant thereto. It is conceded that the amount found due on the lease is correct if plaintiffs were not under obligation to accept defendant's proposed subtenant who was ready, able, and willing to rent the premises for a part of the unexpired portion of the lease. The latter is the issue for determination here.

The facts are as follows: On June 8, 1948, plaintiffs' predecessor in title entered into the lease with defendant. Thereunder, for a term of seven years and one month from September 1, 1948, or until

September 30, 1955, defendant rented a portion of the ground floor and basement of the premises known as the WCCO Building at 629 Second Avenue South, Minneapolis, at a total rental of $176,375, payable $2,075 monthly on or before the tenth day of each month. Contained in the lease was a covenant that the lessee agreed not to "* * * assign this lease nor underlet said premises, or any part thereof, without the consent of Lessor in writing." Also contained therein was the customary reentry clause providing that, in case the lessee defaulted in completing any of the terms or conditions of the lease, the lessors might reenter the leased premises and at their option annul and cancel the lease; and that in case of any such termination, the lessee would indemnify the lessors against all loss of rents which might be incurred during the residue of the term of the lease.

Defendant took possession of the premises September 1, 1948, and thereafter all rentals required under the lease up to and including the rental for the month of July 1954 were paid by it. On or about July 1, 1954, it advised plaintiffs in writing that it would vacate the leased premises prior to August 1, 1954; that it would immediately commence looking for a desirable subtenant therefor; and that plaintiffs should likewise look for such a subtenant. On July 7, 1954, defendant submitted a proposed lease whereunder the premises would be rented to the postmaster general of the United States for use as a regional operations office for a period of 11 months from August 1, 1954, at a monthly rental of $1,795.50. For the purposes of the motion for summary judgment, it was agreed that the subtenant thus proposed was ready, able, and willing to assume the obligations of the lease to the extent described and was otherwise a suitable subtenant therefor.

On July 12, 1954, plaintiffs advised defendant that they would not consent to the proposed sublease and would not permit the premises to be subleased by anyone for any part of the unexpired portion of the lease but would require that defendant pay the full rental due each month thereon. As an alternative they proposed that defendant pay them $20,000 for a release covering all its obligations under the

lease. This was rejected by defendant. Thereafter, in July 1954, defendant vacated the premises and subsequently each month until the lease expired tendered to plaintiffs as rental a sum equal to the difference in the amount due under the lease and the amount the postmaster general would have paid had the sublease been accepted by plaintiffs. Such tenders were rejected by plaintiffs.

Subsequently, this action was instituted. In its answer defendant claimed an offset in the amount claimed due for the unexpired term of the lease equal to the rental that would have been paid under the sublease by the postmaster general. Plaintiffs thereupon moved for summary judgment. As indicated above, it was then stipulated that the postmaster general of the United States was in all respects a highly satisfactory, desirable, and suitable subtenant, plaintiffs' sole contention being that, under the provision of the lease above quoted, they were not obligated to accept *any* subtenant *suitable* or otherwise and might arbitrarily refuse to sublease to anyone proposed by the lessee. It was also agreed for the purpose of this motion that plaintiffs had at no time consented to defendant's removal from, or surrender of, the premises and that they had at no time consented to any assignment of sublease thereof or accepted defendant's forfeiture thereof so as to terminate its liability thereon.

In computing the amount due for the unexpired portion of the lease, defendant was credited with an amount subsequently paid by a subtenant, the Reynolds Company, under a sublease with plaintiffs, it being stipulated that such sublease would in no way affect the rights of the parties in the instant litigation except by way of a reduction in the amount claimed due for the unexpired term equal to the amount paid by such subtenant during that period.

■ The only issue presented for determination is whether under the lease clause above quoted plaintiffs could arbitrarily refuse to accept the suitable subtenant proffered by defendant. Examination of our decisions indicates that we have had no prior case involving a similar fact situation. In foreign jurisdictions, where the question has been presented, a majority of the courts have held that in a lease such as this the lessor does not have the duty of mitigating damages;

may arbitrarily refuse to accept a subtenant suitable and otherwise responsible; and may recover from the lessee the full rentals due under the lease as and when they become due. Friedman v. Thomas J. Fisher & Co. Inc. (D. C.) 88 A. (2d) 321; Rice v. Dudley, 65 Ala. 68; Browne v. Dugan, 189 Ark. 551, 74 S. W. (2d) 640; Strei v. Brooks, 95 Cal. App. 589, 273 P. 145; Boardman Realty Co. v. Carlin, 82 Conn. 413, 74 A. 682; Manley v. Kellar, 47 Del. 511, 94 A. (2d) 219; Williams v. Aeroland Oil Co. 155 Fla. 114, 20 So. (2d) 346; Hirsch v. Home Appliances, Inc. 242 Ill. App. 418; Patterson v. Emerich, 21 Ind. App. 614, 52 N. E. 1012; Jordon v. Nickell (Ky.) 253 S. W. (2d) 237; Lirette v. Sharp (La. App.) 44 So. (2d) 221; Enoch C. Richards Co. v. Libby, 136 Me. 376, 10 A. (2d) 609, 126 A. L. R. 1215; Fifty Associates v. Berger Dry Goods Co. Inc. 275 Mass. 509, 176 N. E. 643; Jennings v. First Nat. Bank, 225 Mo. App. 232, 30 S. W. (2d) 1049; Merrill v. Willis, 51 Neb. 162, 70 N. W. 914; Heckel v. Griese, 12 N. J. Misc. 211, 171 A. 148; Zucker v. Dehm, 128 N. J. L. 435, 26 A. (2d) 564; Sancourt Realty Corp. v. Dowling, 220 App. Div. 660, 222 N. Y. S. 288; Underhill v. Collins, 132 N. Y. 269, 30 N. E. 576; White v. Smith, 8 Ohio App. 368; Rucker v. Mason, 61 Okl. 270, 161 P. 195; Higgins v. Street, 19 Okl. 45, 92 P. 153, 13 L.R.A.(N.S.) 398; Meagher v. Eilers Music House, 84 Ore. 33, 164 P. 373; Milling v. Becker, 96 Pa. 182; Silbert v. Keton (Tex. Civ. App.) 29 S. W. (2d) 824; 1 Tiffany, Landlord and Tenant, § 182, p. 1170; 1 American Law of Property, § 3.99, p. 392; 2 Underhill, Landlord and Tenant, § 713, p. 1214.

■ The reasons expressed in support of this rule are that, since the lessor has exercised a personal choice in the selection of a tenant for a definite term and has expressly provided that no substitute shall be acceptable without his written consent, no obligation rests upon him to look to anyone but the lessee for his rent, Stern v. Thayer, 56 Minn. 93, 57 N. W. 329; White v. Huber Drug Co. 190 Mich. 212, 157 N. W. 60; that a lease is a conveyance of an interest in real property and, when a lessor has delivered the premises to his lessee, the latter is bound to him by privity of estate as well as by privity of contract, Davidson v. Minnesota Loan & Trust Co. 158

Minn. 411, 197 N. W. 833, 32 A. L. R. 1418; cf. W. C. Hines Co. v. Angell, 188 Minn. 387, 247 N. W. 387; that a lessor's right to reenter the premises upon lessee's default or abandonment thereof is at the lessor's option and not the lessee's, Kulawitz v. Pacific Woodenware & Paper Co. 25 Cal. (2d) 664, 155 P. (2d) 24; Rau v. Baker, 118 Ill. App. 150; and that a lessee's unilateral action in abandoning leased premises, *unless accepted by his lessor*, does not terminate the lease or forfeit the estate conveyed thereby, nor the lessee's right to use and possess the leased premises and, by the same token, his obligation to pay the rent due therefor. Haycock v. Johnston, 81 Minn. 49, 83 N. W. 494, 1118; Id. 97 Minn. 289, 106 N. W. 304.

■ Where this court has had occasion to consider the principles involved in the present appeal, although not like fact situations, it has expressed a viewpoint which appears to be in accord with the majority rule. Thus, in Haycock v. Johnston, 81 Minn. 49, 52, 83 N. W. 494, 495 (first case), where the lease did not contain a reentry clause, this court rejected the lessee's contention that the lessor should have made an effort to rerent the leased property after the lessee had surrendered possession thereof, holding that:

"* * * Plaintiff did not accept defendant's surrender of the property, and had no right to re-rent it. If he had accepted it back, and re-rented it to some other person, a rescission of the contract of lease would have been thereby effected, and defendant wholly released from his obligation."

In the second case (Haycock v. Johnston, 97 Minn. 289, 106 N. W. 304) this court approved the above rule, citing in support thereof Buckingham Apartment House Co. v. Dafoe, 78 Minn. 268, 80 N. W. 974; Stern v. Thayer, 56 Minn. 93, 57 N. W. 329; Bowen v. Haskell, 53 Minn. 480, 55 N. W. 629; Nelson v. Thompson, 23 Minn. 508, but held that, because the evidence then disclosed that the lessor had accepted a surrender of the premises by lessee, the lease thereby became canceled. In Stern v. Thayer, *supra,* where the lease prohibited its assignment or the subletting of the leased premises and contained a reentry clause, it was held that the lessor's actions under the reentry clause clearly manifested his intention to continue the

lease and did not constitute an acceptance of its surrender. There we stated (56 Minn. 98, 57 N. W. 330) :

"* * * The landlord had a right to refuse to permit defendant to select a tenant. He had a right to devise any scheme or plan to rent the rooms should they become vacant, and everything that he did with Dr. James was in strict accordance with, and under the conditions found in, the lease."

In Nelson v. Thompson, 23 Minn. 508, 512, it was held:

"* * * That [a surrender by operation of law], as said by Parke, B., in Lyon v. Reed, 13 M. & W. 285, 306, can only take place 'where the owner of a particular estate has been a party to some act, the validity of which he is by law afterwards estopped from disputing, and which would not be valid if his particular estate had continued to exist.' Such would be the case of a lessor taking unqualified possession of demised premises, and dealing with them in a way wholly inconsistent with the continuance of an already existing and unexpired term. In such a case, as against the lessor, the law, upon the principle of estoppel, implies a mutual agreement between him and his lessee, whereby the possession of the premises has been abandoned by the latter, and resumed by the former, in pursuance of such agreement."

█ The cited cases of course are to be distinguished from those wherein a lessor by some act or statement has indicated his acceptance of a lessee's abandonment of leased premises and thus in effect terminated the lease. The remedy there of course is for damages resulting from the breach with the attendant obligation upon the lessor to use reasonable efforts to mitigate such damages subsequent to the breach. Newberg v. Conley, 190 Minn. 459, 252 N. W. 221; Galbraith v. Wood, 124 Minn. 210, 144 N. W. 945, 50 L.R.A.(N.S.) 1034; Kalkhoff v. Nelson, 60 Minn. 284, 62 N. W. 332.

█ A number of writers have advanced the theory that a more modern and just viewpoint should be applied in situations such as the present; that the rule applicable in ordinary breach of contract cases, requiring efforts to mitigate damages after breach,

should be applied to leases; and in furtherance of this view that a lessor should be obligated to accept a suitable subtenant offered by the lessee. See, 2 Powell, Real Property, par. 229, note 79; McCormick, *Rights of Landlord upon Abandonment*, 23 Mich. L. Rev. 211, 222; 44 Harv. L. Rev. 993; 34 Harv. L. Rev. 217. Defendant also cites decisions from the Supreme Courts of Iowa, Kansas, and Wisconsin[1] as giving support to this viewpoint. In some of the decisions from such jurisdictions, it is frankly acknowledged that the viewpoint adopted is "in conflict with the weight of authority in the United States, * * *." Lawson v. Callaway, 131 Kan. 789, 791, 293 P. 503, 504. Likewise, it appears that in some of the decisions cited, while the principles expressed lend support to defendant's contentions, the evidence therein discloses that the lessors involved had accepted the lessees' abandonment of leased premises and in consequence were under obligation to mitigate the damages. See, Selts Investment Co. v. Promoters, 197 Wis. 476, 222 N. W. 812; Galvin v. Lovell, 257 Wis. 82, 42 N. W. (2d) 456; cf. Anderson v. Andy Darling Pontiac, Inc. 257 Wis. 371, 43 N. W. (2d) 362.

■ We feel that we must adhere to the majority rule. In reaching this conclusion we are motivated by the fact that the language of the assignment provision is clear and unambiguous and that many leases now in effect covering a substantial amount of real property and creating valuable property rights were carefully prepared by competent counsel in reliance upon the majority viewpoint. It would seem clear from the language adopted in all such cases that the lessors therein are entitled to place full reliance upon the responsibility of their respective lessees for the rentals they have contracted to pay. Should a lessee desire the right to assign or sublet to a suitable tenant, a clause might readily be inserted in the lease similar to those now included in many leases to the effect that the lessor's written consent to the assignment or subletting of the leased premises should not be unreasonably withheld. There being

---

[1] E.g., Friedman v. Colonial Oil Co. 236 Iowa 140, 18 N. W. (2d) 196; Marmont v. Axe, 135 Kan. 368, 10 P. (2d) 826; Galvin v. Lovell, 257 Wis. 82, 42 N. W. (2d) 456.

no clause in the present lease to such effect, we are compelled to give its terms their full force and effect as have the courts of a majority of other jurisdictions.

The judgment is affirmed.

Affirmed.