Williams, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover the sum of $251,650 as rent for the period from July 1,1935, to December 31,1938, inclusive, for certain premises described in a lease for a postal station, dated December 8, 1923. This lease superseded and can-celled a prior lease for the same premises dated October 24, 1922, running for a period of twenty years, which contained a ninety-day cancellation clause providing for the termination of the lease whenever the postal station could be moved into a Government building. The superseding lease of December 8,1923, omitted the cancellation clause of the prior lease, otherwise its provisions were precisely the same.
The defendant, claiming that the superseding lease was void for want of consideration, and that its occupancy of the premises was under the prior lease of October 24, 1922, vacated the premises of plaintiff on March 1, 1935, and moved the parcel-post functions theretofore conducted there to a new post-office building erected by the defendant. The defendant has not occupied the premises of plaintiff since that date and has refused to recognize any right of plaintiff to receive the rent stipulated in the lease.
On July 12, 1935, plaintiff instituted suit in this court to recover $24,166.39, the rent due, under the terms of the lease, for the period March 1, 1935, to June 30, 1935. The court held that the lease was a valid, subsisting, and enforceable one and entered judgment for the plaintiff for the entire amount sought to be recovered. Twin Cities Properties, Inc. v. United States, 87 C. Cls. 531. The defendant made no motion for a new trial, and no petition for certiorari was filed with the Supreme Court of the United States. The judgment obtained was subsequently paid in full.
*123 The defendant does not undertake -in this case to reassert the invalidity .of the lease sued upon but in its brief and argument raises three points against the right of plaintiff to recover the amount claimed:
(1) That the defendant is entitled to deduct from the rent due for the period the sum of $34,894.44, the amount plaintiff would have been required under the lease' to spend for heat, light, power, wages, building operations, repairs, water, maintenance, elevator, and other services, had the defendant continued to occupy the premises as a parcel-post station during the period of the claim. It is urged that the furnishing of these services constituted in part the consideration for the stipulated rental provided in the lease, and that since plaintiff by reason of the nonoccupancy of the premises as a parcel-post station for the period covered by the claim was relieved of these expenditures which it would otherwise have incurred, the defendant, as a matter of right and law, is entitled to deduct the same from the rental accruing for such period. The defendant says in the brief:
* * * plaintiff is entitled to nothing more than it would have realized as net income from the premises, had the defendant actually occupied the same.
The amount which plaintiff can recover under the lease must be determined in accordance with the provisions of the contract between the parties, and we are of opinion that under the principle of law applicable to contracts containing provisions such as the lease involved in this case, the plaintiff can claim no better position as to the amount which it may recover than that which would have existed if the contract had been performed by both parties. The obligation of the defendant to pay a gross annual rental of $71,900 was dependent upon the performance by plaintiff of certain stipulated conditions, under which the plaintiff promised and became obligated to bear the expense necessary to furnish heat, light, power, wages, building supplies, repairs, water, maintenance of elevator, and other services during the term of the lease. Upon the breach of the contract by the defendant plaintiff became entitled to recover *124 thereon, but the amount which he can recover under the contract cannot exceed the amount of compensation to which he would have been entitled, or would have received, had the contract been fully performed by both parties. In other words, the plaintiff can recover only such amount as will put it in as good a position as it would have been had the defendant kept its promises. By the defendant’s nonperformance, the plaintiff was saved from the labor or expense of performing- on its part and, in order correctly to settle the rights of both parties under the contract, the cost or saving to the plaintiff, by being relieved of the expense of performance of its promises contemplated by the contract, which obviously entered into the stipulated annual rental, should be deducted from the value to it of the performance which the defendant should have made. This rule applies in the case of a bilateral contract with dependent promises which is partly unperformed by plaintiff, and the value of the performance promised by the plaintiff, and still unperformed because of the breach, should be deducted from the value of the performance still due from the defendant. Vol III, Williston on Contracts, sections 1338, 1339, 1349. This rule was applied by the court in Benjamin v. Hillard et al., 23 How. 149, in which the court, quoting from Alder v. Keightly, 15 M. and W. 117, said,, “* * * here is a clear rule: that the amount that would have been received, if the contract had been kept, is the measure of damages if the contract is broken.” See, also,, United States v. Speed, 8 Wall. 77, 84, 85.
The facts show (finding 4) that if the defendant had performed its promises made in the contract, the plaintiff,, in the performance of its promises therein, would have expended for the purposes mentioned the sum of $34,894.44 during the period from July 1, 1935, to December 31, 1938,. inclusive, for which it seeks to recover rental from the defendant in this action. However, because of the defendant’s failure to perform, it was only necessary for the plaintiff to expend the amount of $6,070.40 for the purpose of' properly maintaining and caring for the premises covered by the lease. The amount so expended should be' deducted from the $34,894.44, which plaintiff would otherwise have. *125 been required to expend, leaving the sum. of $28,824.04 as the sum by which the total gross rental of $251,650 claimed in this case should be reduced in fixing the amount of the judgment to which plaintiff is entitled under the contract.
Plaintiff contends that since in the prior suit (87 Ct. Cls. 531) it sued for rent under the same contract for the period March 1 to June 30,1935, inclusive, the defendant could have in that proceeding asserted the defense that the cost of performance on plaintiff’s part, if the lease had been kept, should be deducted from the amount recoverable under the contract, and that the defendant is estopped to raise such defense in the present case by reason of the principle that a party cannot split up defenses and present them in piecemeal in successive suits growing out of the same transaction. We are of the opinion that plaintiff’s position cannot be sustained in the circumstances of this case. The cause of action, to wit, the amount of rent due under the contract for the period July 1, 1935, to December 31, 1938, is not the same subject matter as was involved in the prior suit. While the claim is for rent due under the lease, the validity and legality of which were involved and adjudicated in the prior case, recovery is here sought for a period subsequent to the period for which an amount was recovered in the prior suit. The case of The Washington, Alexandria, and Georgetown Steam Packet Company v. Frederick E. Sickles et al., 24 How. 333, was a second suit by Sickles and Cook to recover from the Packet Company a sum of money, being a part of the consideration or price for the use of a machine for which the plaintiffs had a patent, and was the complement of a whole, of which the sum demanded in the first suit was the other part. From the facts stated by the court, it appears that in the second suit the plaintiffs produced upon the trial, as the only testimony of the contract between the parties and their right to recover the second instalment, the proceedings- of the first suit mentioned in the declaration, and insisted that these proceedings operated as an estoppel upon the defendants. In addition, plaintiffs in this second suit submitted proof of the quantity of the fuel that had been used in operating the boat in order to show the amount due and relied upon the *126 rate as settled to determine their demand, and insisted that the defendants were estopped to prove there was no such contract; or to disprove any one of the averments in the first count of the declaration in the former suit; or to show that no saving of fuel had been effected. The Circuit Court sustained the contentions of plaintiffs and excluded the testimony offered by defendants in the second suit to prove that there was no contract; that no saving of fuel had been effected by the use of plaintiffs’ machine; that the so-called experiment was not made pursuant to the contract; that the verdict in the first suit was in fact rendered upon all the testimony and allegations that were submitted to the jury, and was in point of fact rendered upon the issues generally, and not upon the first count of the declaration specially. Upon appeal, the Supreme Court reversed the Circuit Court and held that the defendants were entitled to raise these issues if they had not been decided in the first case and to show by evidence whether the matters then set up as defenses had been presented, considered, and decided in the former suit, and stated, at page 342, that “Tho essential conditions under which the exception of the res judicata becomes applicable are the identity of the thing demanded, the identity of the cause of the demand, and of the parties in the character in which they are litigants. * * * that a judgment or decree set up as a bar by plea, or relied on as evidence by way of estoppel, must have been made by a court of competent jurisdiction upon the same subject matter, between the same parties for the same purpose.” The court sustained the contention of the Packet Company that, conceding the record to be admissible as evidence, in order to render the verdict and judgment in the first suit an estoppel, “it must be shown by the record, that the very point which it is sought to estop the party from contesting was distinctly presented by an issue, and expressly found by the jury, * *
Subsequently, in 1876, the court decided the case of Cromwell v. County of Sac, 94 U. S. 351, which was a suit on four bonds of the county of Sac, in the State of Iowa, each for $1,000, and four coupons for interest, attached to them, each for $100. To defend this action, the defendant, *127 the county of Sac, relied upon tbe estoppel of a judgment rendered in favor of tbe county in a prior action upon certain earlier maturing coupons on tbe same bonds. Tbe court said, at page 852:
In considering tbe operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against tbe prosecution of a second action upon tbe same claim or demand, and its effect as an estoppel in another action between tbe same parties upon a different claim or cause of action. In the former case, tbe judgment, if rendered upon tbe merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat tbe claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defences never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or de-fence actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.
But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a *128 different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.
The difference in the operation of a judgment in the two classes of cases mentioned is seen through all the leading adjudications upon the doctrine of estoppel.
The court further said at pages 854, 355:
These cases, usually cited in support of the doctrine that the determination of a question directly involved in one action is conclusive as to that question in a second suit between the same parties upon a different cause of action, negative the proposition that the estop-pel can extend beyond the point actually litigated and determined. The argument in these cases, that a particular point was necessarily involved in the finding in the original action, proceeded upon the theory that, if not thus involved, the judgment would be inoperative as an estoppel. . . .
And, further, at page 856, the court said:
It is not believed that there are any cases going to the extent that because in the prior action a different question from that actually determined might have arisen and been litigated, therefore such possible question is to be considered as excluded from consideration in a second action between the same parties on a different demand, although loose remarks looking in that direction may be found in some opinions. On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action.
The rule announced and applied in Cromwell v. County of Sac, supra, was approved and reaffirmed in Southern Pacific Railroad Co. v. United States, 168 U. S. 1, 48, 50; Tait v. Western Maryland Railway Co., 289 U. S. 620, 628.
Upon these authorities we hold that the defendant is not estopped by the decision in the former case to raise the question of the deduction.
(2) The defendant contends that the plaintiff, at most, is only entitled to recover nominal damages herein, as to which the court will not entertain jurisdiction, because of plaintiff’s *129 failure to make a reasonable attempt to relet the premises and thus minimize and reduce the amount of its loss. There is no evidence in the record to show what eifort, if any, plaintiff made to relet the premises subsequent to abandonment by the defendant, but it is not a matter of importance whether such effort was made or not made as the plaintiff was under no legal obligation to the defendant to rerent the building after the defendant surrendered possession of it. Plaintiff did not accept defendant’s surrender of the property. If plaintiff had accepted it back and rerented it to some other person,-a rescission of the lease would have been thereby effected and the defendant wholly released from its obligation. Haycock v. Johnson, 81 Minn. 49, 83 N. W. 494. This rule is stated in Williston on Contracts, Sec. 1403, where it is said :
The landlord is under no obligation to relet the premises, however; he may remain inactive and sue the tenant for the rent when it matures.
In 36 Corpus Juris 342, sen 1153, the rule is stated:
A landlord is not, on the abandonment of the, demised premises by the tenant in violation of his contract, required to relet for the protection of the latter, but may at his election suffer the premises to remain vacant, and recover his rent for the remainder of the term.
The courts, where this question has been' directly passed upon, have, with few exceptions, followed the rule laid down by Williston and Corpus Juris, and held that a lessor was under no legal obligations to attempt to rerent premises and could recover the rental agreed upon without taking any steps to lessen the damages. The contention of the defendant therefore cannot be sustained.
(3) As the third and final defense the defendant contends that the plaintiff has not proved, as a condition precedent to recovery, that there was an appropriation by Congress for the rent sued for herein. This contention is based on the provision of the lease reading as follows:
* * * for, during, and until the full end and term of twenty (20) years then next ensuing, from and after the fifth day of July, A. D. nineteen hundred and twenty-two, provided Congress shall make the necessary *130 ' appropriation therefor from year to year, or authorize the payment of such rental, and subject to termination as hereinafter provided, and the said party of the second part yielding and paying therefor, unto the said party of the first part, its officers, their successors in office, or assigns, from and after the date last above mentioned during the time of occupation by the United States of the said premises under this lease, rent at the annual rate of * * *.
It is contended that under this provision of the lease an annual appropriation to meet the rent as it accrues is a condition precedent to the payment of the rent and that without an appropriation no rent can accrue; that the burden of proof of the existence of the actual appropriation for the payment of the stipulated rent was upon the plaintiff to establish and that the failure of the plaintiff to do so is fatal to any recovery. In making this contention the defendant overlooks the fact that the provision upon which it relies as a condition precedent to plaintiff’s right to recover is stated in the alternative, (1) either that Congress shall make the necessary appropriations therefor from year to year, or (2) authorize the payment of such rental. This provision of the lease is a standard provision and follows the provisions of the general statutes which in effect prohibit obligating the Government unless under a specific appropriation or in the alternative where the obligation is authorized by law.
The lease in this case was entered into under express authorization of the act of Congress of April 24,1920, Title 39, Sec. 11, U. S. C. A., which provides:
The Postmaster General may, in the disbursement of the appropriation for rent, light, and fuel for first-, second-, and third-class post offices, apply a part thereof to the purpose of leasing premises for the use of post offices of the first, second, and third classes at a reasonable annual rental, to be paid quarterly for a term not exceeding twenty years. (Apr. 24, 1920, c. 161, § 1, 41 Stat. 578.)
The lease in question having been entered into under the express authorization of an act of Congress, the obligation of the Government to pay the rent stipulated in the lease *131 became fixed for the period covered by the lease and that obligation is in no way dependent on Congress making annual appropriations to pay the rent as it accrues.
Furthermore the same point now made by the defendant was raised by the defendant by a demurrer in the first suit herein, No. 43088. The demurrer, insofar as this point is concerned, stated the following grounds:
1. That the petition fails to allege that the Congress has made the necessary appropriation, or authorized payment of the rent sued for, as provided in the lease * * *. Such appropriation or authorization is a condition precedent to any payment of rent.
The court overruled the demurrer. The defendant is now estopped from raising the same question in this proceeding and having it litigated a second time.
The plaintiff is entitled to recover and is hereby awarded judgment in the sum of $222,825.96. It is so ordered.
Littleton, Judge; Geeen, Judge; and Whaley, Chief Justice, concur.
Whitaeek, Judge, took no part in the decision of this case.